**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Cora Sue Bell.,

    Plaintiff,                               Case No. 1:16cv685

        v.                                     Judge Michael R. Barrett

Weltman, Weinberg & Reis Co.,
L.P.A.,, *et al.*,

    Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendants Weltman, Weinberg & Reis Co., L.P.A., Sara Donnersbach, Jeffrey Sobeck, and Embassy Healthcare Inc.'s Motion to Dismiss. (Doc. 26). Plaintiff Cora Sue Bell filed a Response (Doc. 27) and Defendants filed a Reply (Doc. 29).

**I.    BACKGROUND**

There is no dispute between the parties as to the facts or procedural history of this case. Robert Bell, the husband of Plaintiff Cora Bell, was admitted into a nursing center run by Defendant Embassy Healthcare, Inc. As part of the admission process, Plaintiff signed an Admission Agreement with Embassy as her spouse's "Responsible Party." (Doc. 26-1, pp. 7, 14). The Admission Agreement states that as the Responsible Party, Plaintiff was not responsible to pay for her husband's expenses: "Nothing in this agreement shall be construed to require that a Responsible Party is in any way personally liable for payment for services rendered by the Facility to the Resident."

However, Embassy began sending monthly bills to Plaintiff, which led Plaintiff to

make three payments to Embassy. (Doc. 1-6, pp. 2, 3, 6). Then, on November 25, 2014, Defendant Weltman, Weinberg & Reis Co., L.P.A. ("Weltman") sent a letter addressed to "The Estate of Robert Bell c/o Cora Bell, Fiduciary" declaring: "You are not personally liable for the account" but seeking payment of the remaining balance due from the estate. (Doc. 1-1). However, Weltman later sent another letter dated March 11, 2015, which stated that Plaintiff was liable for the amount dues as Robert Bell's spouse. (Doc. 1-2).

On June 29, 2015, Embassy, through its counsel, Defendants Weltman, Sobeck, and Donnersbach ("Weltman Defendants"), filed a complaint in the City of Franklin, Ohio Municipal Court against Plaintiff. (Doc. 1-3). Embassy claimed that pursuant to Ohio's necessaries statute, Ohio Revised Code § 3103.03, Plaintiff was liable for the contractual amount due on Embassy's account. (Doc. 1-3).

Plaintiff filed an answer denying the allegations and raising several affirmative defenses including that Embassy's necessaries claim was barred because Embassy failed to file a probate claim under Ohio Revised Code § 2117.06.[1] (Doc. 26-2).

The trial court granted summary judgment for Plaintiff, holding Embassy's claim was barred under Ohio Revised Code § 2117.06. (Doc. 1-5). Although Plaintiff alleged in her answer that the necessaries statute was preempted by the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. 1691 *et seq.*, the court never considered this affirmative defense. (Doc. 1-5). Embassy appealed to the Ohio Court of Appeals, which

---

[1] Ohio Revised Code § 2117.06 provides that "all claims shall be presented within six months after the death of the decedent, whether or not the estate is released from administration or an executor or administrator is appointed during that six-month period." Ohio Rev. Code § 2117.06(B). The statute also provides that "a claim that is not presented within six months after the death of the decedent shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees." Ohio Rev. Code § 2117.06(C).

reversed the trial court's decision. (Doc. 26-3). On December 12, 2018, the Ohio Supreme Court reversed the Court of Appeals, finding Embassy's claim was barred by Ohio Revised Code § 2117.06. *Embassy Healthcare v. Bell*, 155 Ohio St. 3d 430, 438, 122 N.E.3d 117, 124 (Ohio 2018). The Ohio Supreme Court held that:

> Embassy was required to present its claim for unpaid necessaries to the decedent's estate under R.C. 2117.06 before it could pursue a claim individually against the surviving spouse under R.C. 3103.03. Because Embassy failed to present its claim to the decedent's estate or seek the appointment of an administrator within six months of the decedent's death, Bell was entitled to summary judgment.

*Id*.

Plaintiff filed her Complaint in this Court on June 24, 2016. Plaintiff brings claims pursuant to Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), the Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01, *et seq.* ("OCSPA"), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* ("ECOA").

The Weltman Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Weltman Defendants argue that (1) Plaintiff's claims are barred by the doctrine of res judicata; (2) controlling case law at the time the Weltman Defendants filed the action in state court did not require a creditor to present a claim to the estate as a condition precedent to pursuing a debt under the necessaries statute; and (3) Plaintiff has not plead viable claims under the FDCPA, the OCSPA, or the ECOA.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light

3

most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rules of Civil Procedure 8(a)(2) provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### B. Res Judicata

In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 121 Ohio St. 3d 526, 530, 905 N.E.2d 1210, 1215–16 (Ohio 2009) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 61, 862 N.E.2d 803, 806 (Ohio 2007)).[2]

---

[2] As this Court has recognized: "Pursuant to the Full Faith and Credit statute, a federal court must give a state court judgment the same preclusive effect that the judgment would have in state court, and must apply the law of the state where that judgment was rendered to determine its preclusive effect in the federal action. *McConnell v. Applied Performance*

4

The Weltman Defendants argue that Plaintiff's claims under the FDCPA, the OCSPA and the ECOA were compulsory counterclaims under Ohio Rule of Civil Procedure 13(A), and therefore these claims are barred by res judicata.

Under Ohio law, "[f]ailure to assert a compulsory counterclaim constitutes a form of res judicata and acts as a bar to subsequent litigation." *Jarvis v. Wells Fargo Bank*, No. 09 CO 6, 2010 WL 2749602, at *6 (Ohio Ct. App. June 30, 2010) (citing *Forney v. Climbing Higher Ents., Inc.*, 158 Ohio App.3d 338, 815 N.E.2d 722 (Ohio Ct. App. 2004); *Quintus v. McClure*, 41 Ohio App.3d 402, 403-404, 536 N.E.2d 22 (Ohio Ct. App. 1987)). The purpose of Ohio Rule of Civil Procedure 13, like the doctrine of res judicata, "is to avoid multiplicity of suits by requiring in one action the litigation of all existing claims arising from a single transaction or occurrence, no matter which party initiates the action." *Forney*, 815 N.E.2d at 726.

Ohio Rule of Civil Procedure 13(A) states "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ohio R. Civ. P. 13(A). Ohio courts use a two-pronged test when applying Rule 13(A): (1) does the claim exist at the time of serving the pleading; and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim. *Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St. 3d 274, 277, 626 N.E.2d 99, 102 (Ohio 1994) (citing *In Geauga Truck & Implement Co. v. Juskiewicz*, 9 Ohio St.3d 12, 14, 457 N.E.2d

---

*Technologies, Inc.*, No. 2:01cv1273, 2002 WL 32882707, *10 n.5 (S.D.Ohio Dec. 11, 2002) (citing 28 U.S.C. § 1738; *In re Fordu*, 201 F.3d 693, 703 (6th Cir.1999)). Therefore, this Court must apply the preclusion principles of Ohio law.

5

827, 829 (Ohio 1984)). "If both prongs are met, then the present claim was a compulsory counterclaim in the earlier action and is barred by virtue of Civ.R. 13(A)." *Id.*

Plaintiff argues that her claims are not compulsory counterclaims. While Plaintiff does not dispute that her claim existed at the time Plaintiff filed her answer in the state court case, Plaintiff rejects the notion that her claims under the FDCPA, the OCSPA, or the ECOA arise out of the transaction or occurrence that is the subject matter of the state court case.

Ohio courts have broadly construed both the "subject matter" and the "transaction or occurrence" language of Ohio Civil Rule 13(A). *Osborn Co. v. Ohio Dep't of Adm. Serv.*, 80 Ohio App. 3d 205, 209, 608 N.E.2d 1149, 1151 (Ohio Ct. App. 1992). Both the Ohio Supreme Court and the Sixth Circuit have used the "logical relation" test in determining whether claims arise out of the same transaction or occurrence. *Rettig*, 626 N.E.2d at 103; *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1101 (6th Cir. 2015) ("Rather than look to whether the original claim and counterclaim literally arise out of the same transaction or occurrence, we ask, 'Is there a logical relationship between the two claims?'"). Under the "logical relation" test, counterclaims are compulsory if the claims "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Rettig*, 626 N.E.2d at 103 (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir. 1961)). However, a partial overlap in issues of law and fact does not compel a finding that two claims are logically related. *Bauman*, 808 F.3d at 1101 (citing *Peterson v. United Accounts, Inc.*, 638 F.2d 1134,

6

1137 (8th Cir.1981)).

The Sixth Circuit has "resolved with clarity the lack of a 'logical relationship' between claims for default under 'a private loan contract governed by state law' and claims for violation of the provisions of federal consumer-protection statutes, which 'require[ ] interpretation of federal statutory law and regulations designed' to serve unique congressional purposes." *Marais v. JPMorgan Chase Bank, N.A.*, 676 F. App'x 509, 513 (6th Cir. 2017) (quoting *Bauman*, 808 F.3d at 1101-102).

This Court finds that there is no logical relationship between the state court action and Plaintiff's claims in this Court. The legal issue in the state court action was whether Plaintiff was indebted to Embassy based on the Ohio necessaries statute. Here, Plaintiff's claims are based on Defendants' collection methods. In her Complaint, Plaintiff claims:

> . . . in suing the Plaintiff and attempting to impose liability on her as a spouse of the debtor violated the FDCPA by using a collection method which could not be legally taken which is a violation of the following sections of the FDCPA:
>
> a) "false, deceptive, or misleading representation or means in connection with the collection of any debt," prohibited by 15 U.S.C. §1692e;
>
> b) "the false representation of the character, amount, or legal status of any debt," prohibited by 15 U.S.C. §1692e(2)(A);
>
> c) "the use of any false representation or deceptive means to collect or attempt to collect any debt," prohibited by 15 U.S.C. §1692e(10); and
>
> d) an "unfair or unconscionable means to collect or attempt to collect any debt," prohibited by 15 U.S.C. §1692f.

(Doc. 1, PAGEID# 5). Plaintiff claims that these same acts are also unfair and deceptive acts or practices under the OCSPA. (Doc. 1, PAGEID# 6). As part of her

7


claim under the ECOA, Plaintiff claims: "Defendant, Embassy, through the actions of its agents Defendants Weltman, Sobeck and Donnersbach, attempted to impose liability upon the Plaintiff for her spouse's debt by suing her for the balance owed on his account." (Doc. 1, PAGEID# 6).

As these allegations make clear, Plaintiff is not challenging whether the debt of her husband is valid or collectible. Instead, she is challenging the practices which Defendants used when they collected or attempted to collect the debt from her. *Accord Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 797 (S.D. Ohio 2006) ("Plaintiffs, in this case, are not challenging the amounts they owed to their creditors, which would implicate claim preclusion, but rather challenge the capacity of Defendants to bring debt collection lawsuits against them and the practices Defendants employed when they attempted to collect those debts."); *Todd v. Weltman Weinberg & Reis Co.*, LPA, No. 1:03CV171, 2008 WL 419943, at *6 (S.D. Ohio Feb. 14, 2008) ("Plaintiffs are not challenging the amounts they owe to their creditors, but instead challenge the practices Defendants employed when they attempted to collect those debts. As such, Plaintiffs' FDCPA claims arise out of a different set of operative facts than did the underlying state court cases."). Moreover, Plaintiff's sole basis for her FDCPA and OCSPA claims is not that the underlying action was filed in violation of the applicable statute of limitations. *Cf. Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 903 (N.D. Ohio 2012) (claims based on statute of limitations argument are barred because those claims "could and should have been raised as a defense to the validity or collectability of the debt itself in the underlying case.").

Therefore, Plaintiff's FDCPA, OCSPA and ECOA claims are a permissive

counterclaims and not compulsory counterclaims. Accordingly, Plaintiff's claims are not barred by the doctrine of *res judicata*.

### C. **FDCPA**

Congress enacted the FDCPA in order to eliminate "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006) (quoting 15 U.S.C. § 1692(a)).

The Weltman Defendants maintain that they were acting under controlling law when they filed the state court action, and therefore they cannot be found to have intentionally violated the FDCPA. However, the FDCPA is a strict-liability statute. *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014). It is not necessary for a plaintiff to prove knowledge or intent. *Id.* (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011)). To the extent the Weltman Defendants are raising a bona fide error defense, Defendants "must prove by a preponderance of the evidence that the violation was unintentional, that it was the result of a bona fide error, and that the debt collector maintained procedures to avoid the error." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014). At this stage of the proceedings, the Weltman Defendants have yet to establish the elements of this defense. Accordingly, Defendants' Motion to Dismiss is DENIED as to Plaintiff's FDCPA claim.

### D. **ECOA**

Congress enacted the ECOA "to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for

individual credit." *RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 383 (6th Cir. 2014) (quoting *Mays v. Buckeye Rural Elec. Coop.*, 277 F.3d 873, 876 (6th Cir. 2002)). To determine whether Plaintiff engaged in conduct protected by the ECOA, the Court must first decide whether the parties qualify under the Act, *i.e.*, whether the Weltman Defendants are "creditors" and whether Plaintiff is an "applicant" as those terms are defined by the ECOA. *See Edwards v. Physician's Credit Bureau*, No. 2:00cv991, 2001 WL 1678783, at *2 (S.D. Ohio Nov. 7, 2001). Where a plaintiff fails to allege that she engaged in conduct protected by the ECOA, dismissal is proper. *Hanlin v. Ohio Builders & Remodelers, Inc.*, 196 F. Supp. 2d 572, 580 (S.D. Ohio 2001).

The Weltman Defendants argue that Plaintiff is not an "applicant" under ECOA and, therefore, Plaintiff lacks standing to bring a claim under the statute. Plaintiff maintains the term "applicant" is broader than just a co-signer on a written agreement.

The Sixth Circuit has held that the definition of "applicant" found in the applicable regulations includes guarantors:

> Creditors who violate ECOA or Regulation B may be sued for actual damages, punitive damages, and attorneys' fees. *See* 15 U.S.C. § 1691e. But only "applicants" have the ability to sue for ECOA violations. *See id.* ECOA's definition of "applicant" does not explicitly include guarantors. *See* 15 U.S.C. § 1691a(b). Regulation B, however, contains its own definition of "applicant," and that definition allows guarantors to sue for violations of the spouse-guarantor rule. *See* 12 C.F.R. § 202.2(e), 12 C.F.R. § 1002.2(e).

*RL BB Acquisition*, 754 F.3d at 384.[3]

---

[3]The Eighth Circuit, in *Hawkins v. Community Bank of Raymore*, 761 F.3d 937 (8th Cir. 2014), concluded that spouse-guarantors are not "applicants" as that term is statutorily defined in the ECOA. While the Eighth Circuit was affirmed by the Supreme Court, 136 S.Ct. 1072, 194 L.Ed.2d 163 (2015), it was by an equally divided court and the decision is entitled to no precedential value.

However, even if Plaintiff falls within the definition of "applicant," she is unable to show that the Weltman Defendants are "creditors."

The ECOA defines a creditor as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Regulation B, which provides additional regulations as authorized by the ECOA, define creditor in a similar way: "Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(*l*).

Courts have held that an ordinary debt collector that was "simply attempting collect on a debt that resulted from [a creditor's] decision to extend credit" is excluded from the ECOA's definition of creditor. *See*, *e.g.*, *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 408 (6th Cir. 1998) (granting judgment as a matter of law in favor of defendant where plaintiff failed to present evidence of participation in credit decisions); *Edwards v. Physician's Credit Bureau*, No. C2-00-991, 2001 WL 1678783, at *3 (S.D. Ohio Nov. 7, 2001) ("CB, who was merely attempting to collect the debt owed by the Edwards to Hocking Valley, does not qualify as a creditor within the meaning of the ECOA, and plaintiff's argument to the contrary must fail.").

Plaintiff argues that the ECOA regulations are broad enough to include the collection efforts of the Weltman Defendants because "[c]redit transaction means every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, information requirements;

11

investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures)." 12 C.F.R. § 202.2 (m). Plaintiff argues that the Weltman Defendants participated in "collection procedures" when it sent its March 11, 2015 letter (Doc.1-2) informing Plaintiff she was liable for the amount due on the account; and when it filed the state court action to collect the amount due (Doc. 1-3).

Regardless of whether these acts fit within the definition of "collection procedures," Plaintiff has not alleged facts which would support a finding that the Weltman Defendants are "creditors." In addition, Plaintiff has not alleged that the Weltman Defendants took an "adverse action" against her in violation of the ECOA. The Act defines an adverse action as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d); *see also* 12 C.F.R. § 202.2 (c)(1) (defining adverse action as "(i) [a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application ... (ii) [a] termination of an account or an unfavorable change in the terms of an account that does not affect all or substantially all of a class of the creditor's accounts."). Moreover, Regulation B specifically states that an adverse action does not include "any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 202.2 (c)(2).

Because Plaintiff has not adequately plead a claim under ECOA against the Weltman Defendants, the Defendants' Motion to Dismiss is GRANTED as to Plaintiff's ECOA claim.

### E. OSCPA

"The OCSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction." *Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St. 3d 31, 33, 989 N.E.2d 997, 999 (Ohio 2013) (citing Ohio Rev. Code §§1345.02(A) and 1345.03(A)).[4]

Defendants argue that Plaintiff cannot maintain a claim under the OSCPA because Bell is not a "consumer" and she has not engaged in a "consumer transaction" under the OCSPA.

Ohio courts have found repeatedly that the OCSPA applies to debt collectors who file suit against debtors. *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 809 (S.D. Ohio 2006) (citing *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260, 1262 (1984) (holding that a collection agency who filed suit against debtors is a "supplier")); *see also Evans v. Midland Funding LLC*, 574 F. Supp. 2d 808, 817 (S.D. Ohio 2008) (explaining that "creditors or agencies who regularly engage in the practice of collecting consumer debts are suppliers engaged in consumer transactions" under the OCSPA). The OCSPA also has been widely held to include debt collection because of the language indicating it regulates violations that occur "before, during, or *after the transaction.*" *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 965 (N.D. Ohio 2009) (citing Ohio Rev. Code §1345.02) (emphasis in original).

---

[4]Ohio Revised Code § 1345.02(A) provides: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." Ohio Revised Code § 1345.03(A) prohibits any "unconscionable act or practice in connection with a consumer transaction."

13

Accordingly, Defendants' Motion to Dismiss is DENIED as to Plaintiff's OCSPA claim.

### III. CONCLUSION

Based upon the foregoing, Defendants' Motion to Dismiss (Doc. 26) is **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

                                               */s/ Michael R, Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court